# EXHIBIT J

# Growth Opportunity's Formal Dispute

 

August 28, 2025

VIA EMAIL: (molina.michael@epa.gov)
Michael Molina
U.S. Environmental Protection Agency
1200 Pennsylvania Avenue, NW
Washington, D.C. 20460

Re:     Wrongful Termination of EPA Assistance Agreement 5H 84087601 under 2
C.F.R. 200.340

Dear Mr. Molina:

Pursuant to 2 CFR 1500.15, Growth Opportunity Partners, Inc. (Growth Opps") is writing to notify you as the EPA Dispute Decision Official that we disagree with grant termination notice outlined in the EPA Action Official's Memorandum dated August 7, 2025 as confirmed in the Assistance Amendment dated August 7, 2025. The termination notice: (1) does not align with the One Big Beautiful Bill Act ("OBBBA") Section 60002, which rescinded only unobligated balances and preserved funds already awarded to grantees; (2) is contrary to our legally binding Assistance Agreement awarded on July 12, 2024, as amended January 6, 2025; (3) provides no other reason for termination pursuant to 2 C.F.R. 200.341; and, (4) undermines the energy independence and economic security of Americans in the following eight states: Ohio, Indiana, Michigan, Kansas, Missouri, New York, Pennsylvania and West Virginia (collectively, the "Industrial Heartland Solar Coalition").

The EPA Action Official's Memorandum dated August 7, 2025 indicates that this termination is due to the determination that:

> As both the grant appropriations and the EPA's administrative cost appropriation are rescinded, the Agency no longer possesses either the substantive legal authority or the financial appropriations needed to continue implementation, oversight or monitoring for waste, fraud, or abuse of these grants or of Solar for All. Thus, any attempt to continue the program's administration, in the absence of any authorizing legislation or appropriated funds for that purpose, is no longer legally permissible. The EPA has been weighing options for the future of the Solar for All program and has made the decision to terminate the SFA program and existing grants because the EPA no longer has a statutory basis or dedicated funding to continue administering and overseeing the nearly $7 billion outlay to approximately 60 grant recipients.

6001 Euclid Avenue, Suite 120
Cleveland, OH 44103

T 216-462-0600

growthopps.org



 

Respectfully, the rescission of unobligated funds and repeal of granting authority under 42 U.S.C. 7434 do not give the EPA the authority to terminate all legally binding Solar for All grant agreements unilaterally. Accordingly, we ask that the termination be promptly reversed and that our grant be immediately reinstated. Please accept this letter as a request to initiate an administrative dispute under 2 C.F.R. 1500 Subpart E.

**(1) EPA's asserted grounds for termination are contrary to OBBBA 60002, rescinding unobligated balances and preserving funds already awarded to grantees.**

According to the EPA Action Official's Memorandum, EPA terminated our Assistance Agreement under 2 CFR 200.340 because:

> *"As both the grant appropriations and the EPA's administrative cost appropriation are rescinded, the Agency no longer possesses either the substantive legal authority or the financial appropriations needed to continue implementation, oversight or monitoring for waste, fraud, or abuse of these grants or of Solar for All."*

However, OBBBA did not rescind the grant appropriations for Solar for All. Section 60002 only authorized rescission of the <u>unobligated</u> balance in the appropriations account established by 42 U.S.C. 7434:

> *SEC. 60002. REPEAL OF GREENHOUSE GAS REDUCTION FUND. Section 134 of the Clean Air Act (42 U.S.C. 7434) is repealed and the unobligated balances of amounts made available to carry out that section (as in effect on the day before the date of enactment of this Act) are rescinded.*

Where the plain language of a statute is unambiguous, no further analysis is required. *Bostock v. Clayton County*, 590 U.S. 644, 674 (2020) (". . . when the meaning of the statute's terms is plain, our job is at an end."). Indeed, after OBBBA passed Congress, the Department of Justice wrote to the court presiding over *Climate United Fund v. Citibank, N.A.* to inform it that new legislation, if signed, would "rescind all <u>unobligated funds</u> appropriated for it." (Letter dated July 3, 2025, to the Clerk of the Court from Yaakov Roth, DOJ.)

Funds awarded to Solar for All grantees were <u>obligated</u> upon award and subject to a legally binding agreement whereby the EPA "promise[d] to spend the money, either immediately or in the future, as work under the obligation is completed." EPA guidance provides that the agency "properly obligates an appropriation for a grant program by creating a definite liability against the appropriation during the period of its availability and as documented by the EPA grant award in accordance with 31 U.S.C. 1501(a)(5)." In other words, the Solar for All grant funds were



6001 Euclid Avenue, Suite 120
Cleveland, OH 44103

T 216-462-0600

growthopps.org



 

obligated upon award, and remained obligated when OBBBA was passed. The OBBBA did not change this and could not have legally rescinded these obligated funding awards. To the extent that the OBBBA did rescind funds set aside for EPA to administer the program, EPA has the legal flexibility to draw from other available unrestricted funds to carry out mandatory oversight.

**(2) EPA's termination of Growth Opps' Assistance Agreement is contrary to 2 C.F.R. 200.340 and the executed agreement.**

The uniform grant regulations at 2 C.F.R. 200.340(a) provide the circumstances under which the government may terminate a grant agreement, which include (a) failure to comply with the grant terms and conditions; (b) with consent of the grantee; (c) by request of the grantee; or, (d) otherwise pursuant to the terms and conditions of the grant, to the extent authorized by law.

The terms and conditions under our Assistance Agreement do not allow for unilateral termination. Accordingly, any subsequent changes to the grounds for unilateral termination of an assistance agreement must be agreed to by both EPA and the grantee. **We have not agreed to terminate this Assistance Agreement and have been diligently working to implement the terms of the award of this critical program.**

We also insist that you do not take any action to liquidate or otherwise impair our funds during the appeals process to comply with 2 C.F.R. 200.344, which requires all federal agencies to avoid deobligation and liquidation until close out has taken place.

**(3) The termination notice provides no other grounds for termination.**

The EPA Action Official's Memorandum notice dated August 7, 2025 does not give any other reason for termination. The other conditions for termination are similarly inapplicable here. Termination for noncompliance is only possible when "the noncompliance with the terms and conditions is substantial such that effective performance of the Assistance Agreement is materially impaired or there is adequate evidence of waste, fraud, or abuse, prompting adverse action by EPA per 2 C.F.R. 200.339, through either a partial or full termination." Neither case has been shown to exist. The EPA has neither identified any non-compliance nor requested that Growth Opps take action to cure any deficiencies in its agreement performance. Furthermore:

a.  We have not failed to comply with the terms or conditions of our Assistance Agreement.
b.  There has been no claim made that the Assistance Agreement will not accomplish the purposes for which it was made.
c.  There has been no finding or concern raised on this award relative to fraud, waste or duplication.



6001 Euclid Avenue, Suite 120
Cleveland, OH 44103

T 216-462-0600

growthopps.org

 

For these reasons, we respectfully request that EPA rescind the termination of our grant and allow the funds to flow to complete crucial energy projects across the Industrial Heartland Solar Coalition and to help this Administration advance energy dominance.

**(4) The termination of our Solar for All Assistance Agreement will undermine energy independence and economic security for Americans located in the Industrial Heartland Solar Coalition.**

Our award is continuing to produce key deliverables of value to the Trump Administration and the U.S. more generally, including this Administration's stated priorities of supporting energy independence, reducing energy costs, and protecting clean air and water, thereby reducing the cost of living.

Retail electricity prices have risen 13% since 2022, outpacing inflation, and rising temperatures, extreme weather, and expanding data centers will continue to drive higher demand. The U.S. cannot meet such demand through fossil fuels alone; solar energy is a critical piece of the American energy independence puzzle. Our Solar for All award would deploy solar technology to add energy to the grid and drastically lower household energy prices for low-and-middle-income Americans located in the Industrial Heartland Solar Coalition. Any further delays in reinstating or processing of our award will result in direct harm to residents located in the Industrial Heartland Solar Coalition.

Already through our Assistance Agreement Growth Opps has managed significant project planning activities. We have further complied with all terms and conditions of our Assistance Agreement and were achieving all the deliverables and activities within the agreed upon scope of work, including for example, recently submitting our required Semi-Annual Progress Report which was accepted by our Project Officer on August 20th as submitted.

If the EPA is able to make a legitimate claim that it no longer possesses the requisite personnel or administrative funding required to oversee and administer the Award, Growth Opps respectfully proposes the appointment of an independent third party to administer and oversee the Assistance Agreement, subject to the EPA's reasonable oversight and supervision. With the EPA's permission, and with an explicit understanding that this would not trigger adherence to terms and conditions in effect as of April 3, 2025, Growth Opps would submit an amendment to the Budget to include an allocation of the EPA funding to be used to pay for such independent third-party administrator for the period of performance of the award.

Until our dispute with the EPA has been resolved, Growth Opps will also object to any claims of noncompliance under 2 C.F.R. 200.344(i).



6001 Euclid Avenue, Suite 120
Cleveland, OH 44103

T  216-462-0600



growthopps.org



 

We will take the course of action necessary to prevent irreparable and continuing harm to our employees, contractors, subrecipients, program beneficiaries, and the communities we serve. We would be happy to answer any questions you may have about this letter or our program. Our designated point of contact is: Michael Jeans, Michael.jeans@growthopps.org; 216.462.0640.

Very truly yours,

GROWTH OPPORTUNITY PARTNERS, INC.

By: _____

Michael Jeans, President and CEO

cc with enclosure:

Devon Brown, EPA Award Official, Brown.Devon@epa.gov
Sean Donahue, General Counsel, donahue.sean@epa.gov
Nathaniel Tisa, Deputy General Counsel, tisa.nathaniel@epa.gov
Jim Payne, Deputy General Counsel for Environmental Media & Regional Law Offices, payne.james@epa.gov
Wendel Askew, Assistant General Counsel for Assistance Law, Askew.Wendel@epa.gov
Dan Coogan, Deputy Assistant Administrator for Infrastructure and Extramural Resources, Coogan.Daniel@epa.gov
Melissa Wise, Director, Office of Grants and Debarment, wise.melissa@epa.gov
Phillip Schindel, EPA Acting Director, Grants Management and Business Operations Division, Schindel.Phillip@epa.gov
Wesley Carpenter, EPA, Carpenter.Wesley@epa.gov
Bryan Fiedorczyk, EPA Project Officer, fiedorczyk.bryan@epa.gov
Hazeletta Burgess, EPA Grants Specialist, burgess.hazeletta@epa.gov



6001 Euclid Avenue, Suite 120
Cleveland, OH 44103

T 216-462-0600

growthopps.org

